**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                       :
                                                   :
          Plaintiff,                      :     Civil Action No. 22-cv-3829
                                                   :
v.                                                 :     **COMPLAINT FOR VIOLATIONS OF**
                                                   :     **SECTIONS 14(a) AND 20(a) OF THE**
AMERICAN CAMPUS COMMUNITIES,                       :     **SECURITIES EXCHANGE ACT OF**
INC., WILLIAM C. BAYLESS, JR.,                     :     **1934**
HERMAN E. BULLS, G. STEVEN                         :
DAWSON, CYDNEY C. DONNELL, MARY                    :     **JURY TRIAL DEMANDED**
C. EGAN, ALISON M. HILL, CRAIG A.                  :
LEUPOLD, OLIVER LUCK, C. PATRICK                   :
OLES, JR., JOHN T. RIPPEL,                         :
                                                   :
          Defendants.                     :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.     This is an action brought by Plaintiff against American Campus Communities, Inc.

("ACC or the "Company") and the members ACC's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed acquisition of ACC by affiliates of Blackstone Real Estate Income

Trust, Inc. ("Blackstone").

      2.     Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on May 10, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.    The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Company will merge with and into Abacus Merger Sub I LLC ("Merger Sub"), a wholly-owned subsidiary of Abacus Parent LLC, an affiliate of Blackstone, with Merger Sub as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 18, 2022 (the "Merger Agreement"), each ACC stockholder will receive $65.47 in cash (the "Merger Consideration") for each ACC share owned.

1.    As discussed below, Defendants have asked ACC's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinions.

2.    It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ACC's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and Blackstone and Merger Sub and other affiliates are headquartered in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of ACC stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant William C. Bayless, Jr., a co-founder of the Company, has served as a member of the Board since 2004 and is the Chief Executive Officer of the Company.

9.      Individual Defendant Herman E. Bulls has served as a member of the Board since 2021.

10.     Individual Defendant G. Steven Dawson has served as a member of the Board since 2004.

11.     Individual Defendant Cydney C. Donnell has served as a member of the Board since 2004.

12.     Individual Defendant Mary C. Egan has served as a member of the Board since 2018.

13.     Individual Defendant Alison M. Hill has served as a member of the Board since 2021.

14.     Individual Defendant Craig A. Leupold has served as a member of the Board since 2021.

15.     Individual Defendant Oliver Luck has served as a member of the Board since 2012.

16.     Individual Defendant C. Patrick Oles, Jr. has served as a member of the Board since 2014.

17.     Defendant ACC is a Maryland corporation and maintains its principal offices at 12700 Hill Country Blvd., Suite T-200, Austin, TX 78738.  The Company's stock trades on the New York under the symbol "ACC."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     ACC is the largest owner, manager and developer of high-quality student housing communities in the United States. The Company is a fully integrated, self-managed and self-administered equity real estate investment trust (REIT) with expertise in the design, finance, development, construction management and operational management of student housing properties. As of September 30, 2020, American Campus Communities owned 166 student housing properties containing approximately 111,900 beds. Including its owned and third-party

4

managed properties, ACC's total managed portfolio consisted of 204 properties with approximately 139,900 beds.

21.     On April 19, 2022, the Company and Blackstone jointly announced the Proposed Transaction:

> Austin, Texas and New York – April 19, 2022 – American Campus Communities, Inc. (NYSE: ACC) ("ACC" or the "Company"), the largest developer, owner and manager of high-quality student housing communities in the United States, today announced that it has entered into a definitive agreement under which Blackstone Core+ perpetual capital vehicles, primarily comprised of Blackstone Real Estate Income Trust, Inc. ("BREIT"), alongside Blackstone Property Partners ("BPP"), will acquire all outstanding shares of common stock of ACC for $65.47 per fully diluted share in an all-cash transaction valued at approximately $12.8 billion, including the assumption of debt.
>
> The purchase price represents a premium of 22 percent to the 90-calendar day volume-weighted average share price ending April 18, 2022, a premium of 30 percent over the closing stock price of February 16, 2022, the date immediately prior to the Company disclosing receipt of an indication of willingness to offer to acquire the Company, and a 14 percent premium to yesterday's closing price.
>
> ACC's portfolio comprises 166 owned properties in 71 leading university markets including Arizona State University, The University of Texas at Austin, Florida State University, and the University of California – Berkeley, among many others. The majority of ACC's properties are high-quality, purpose-built student housing assets located within walking distance of their respective university campuses, with approximately 24 percent of ACC's communities located on campus.
>
> "Through our IPO, eighteen years ago, we began our pioneering quest to transform the student housing sector into a mainstream, institutional asset class within the commercial real estate sector," said Bill Bayless, American Campus Communities Co-founder & Chief Executive Officer. "We have certainly accomplished that mission and are proud and excited to have our best-in-class company join Blackstone, the

world's largest alternative asset manager. This announcement represents the culmination of the passion and dedicated service of the ACC team to our student residents and university partners, while creating significant value for our shareholders."

Bayless continued, "This transaction delivers compelling, immediate, and certain value to our shareholders while positioning ACC to further expand our competitive advantage as we continue in our quest to lead the student housing industry to new heights. Blackstone's expertise, resources and consistent access to capital will allow us to rapidly leverage our platform and core competencies to entrepreneurially grow our core business and to pursue additional innovative opportunities. Moving forward together, the combined synergies of our organizations will enable us to better serve our current and future residents and university partners."

Jacob Werner, Co-Head of Americas Acquisitions for Blackstone Real Estate, said, "American Campus Communities has a best-in-class portfolio and platform, built on longstanding relationships with some of the most distinguished and fastest growing universities in the country. Our perpetual capital will enable ACC to invest in its existing assets and create much-needed new housing in university markets. We're excited to work with the ACC team to deliver communities where students love living."

The transaction has been unanimously approved by ACC's Board of Directors and the independent Special Committee of ACC's Board and is expected to close in the third quarter of 2022, subject to approval by ACC's shareholders and other customary closing conditions.

As a condition to the transaction, ACC has agreed to suspend payment of its quarterly dividend, effective immediately.

As a result of today's announcement, ACC does not expect to host a conference call and webcast to discuss its financial results for the quarter ended March 31, 2022.

**Advisors**
BofA Securities is serving as ACC's lead financial advisor. KeyBanc Capital Markets Inc. is also acting as a financial advisor. Dentons US LLP is serving as the Company's legal counsel.

> Wells Fargo Securities LLC, J.P. Morgan Securities LLC and TSB Capital Advisors are serving as Blackstone's financial advisors, and Simpson Thacher & Bartlett LLP is acting as Blackstone's legal counsel.

* * *

22.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that ACC's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

23.    On May 10, 2022, ACC filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.    The Proxy Statement fails to provide material information concerning financial projections by ACC management and relied upon by BofA in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company

Projections") and provided them to the Board and BofA with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ACC management provided to the Board and BofA. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income, EBITDA, Unlevered Free Cash Flow, and FFOM (funds from operations modified), but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

29.     With respect to BofA's _Publicly Traded Company Analysis_, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

30.     With respect to BofA's _Selected Precedent Transaction Analysis_, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis, including: (i) the enterprise value of each transaction and (ii) each target company's estimated NTM EBITDA.

31.     With respect to BofA's _Discounted Cash Flow Analysis_, the Proxy Statement fails to disclose: (i) the terminal values for ACC; (ii) the inputs and assumptions underlying the use of range of terminal multiples of 20.0x to 24.0x (iii) the inputs and assumptions underlying the use of the growth rate of 3.5%; (iv) the inputs and assumptions underlying the use of the discount rates

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

of 7.50% to 9.00%; and (v) the Company's weighted average cost of capital and the inputs used for its calculation.

32.     With respect to BofA's research analysts analysis, the Proxy Statement fails to disclose the fourteen Wall Street research analysts and their estimated net asset value per share range for the Company.

33.     With respect to BofA's premia paid analysis, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.    The Individual Defendants acted as controlling persons of ACC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of ACC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ACC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ACC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 11, 2022               **MELWANI & CHAN LLP**

                                By:   */s/ Gloria Kui Melwani*
                                      Gloria Kui Melwani
                                      1180 Avenue of the Americas, 8th Fl.
                                      New York, NY 10036
                                      Telephone: (212) 382-4620
                                      Email: gloria@melwanichan.com

                                      *Attorneys for Plaintiff*